UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELADIO CORTEZ MORALES,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-09241-HSG<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

Before the Court is Petitioner-Plaintiff's Eladio Cortez Morales' ("Petitioner-Plaintiff") *Ex Parte* Motion for Temporary Restraining Order. Dkt. No. 3. On October 27, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and an *Ex Parte* Motion for Temporary Restraining Order, against Respondents Director of San Francisco Field Office of U.S. Immigration and Customs Enforcement Sergio Albarran, Acting Director for Immigration and Customs for the U.S. Department of Homeland Security, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. Dkt. Nos. 1, 3. Petitioner-Plaintiff asks this Court to enjoin Respondents from re-arresting him unless and until he is provided notice and a hearing before a neutral decisionmaker to determine whether there has been a material change in circumstances warranting his detention. *See* Dkt. No. 3. For the foregoing reasons, the TRO is GRANTED.

**I.   BACKGROUND**

According to the record before the Court, Petitioner-Plaintiff was brought to the United States from Mexico as an infant in about 1989. Dkt. No. 3 at 7. As a teenager, Petitioner-Plaintiff was convicted of assault with a deadly weapon and sentenced to 22 years in prison. *Id.* While in prison, Petitioner-Plaintiff was the victim of sexual violence and was eventually diagnosed with Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression due to his abuse. *Id.* Based on

1  these events, Petitioner-Plaintiff has a pending U Visa application with U.S. Citizenship and

2  Immigration Services ("USCIS"). *Id.* In 2022, Petitioner-Plaintiff was granted parole and

3  released from prison after serving 17 years. *Id.* at 8. After release, he was immediately arrested

4  by ICE and put in immigration detention. *Id.* In 2025, a state court found that Petitioner-

5  Plaintiff's plea agreement violated the Fifth and Fourteenth Amendments and his conviction was

6  vacated. *Id.* He was then recharged in juvenile court, admitted the charges, and his sentence was

7  deemed served. *Id.* Petitioner-Plaintiff has no other convictions. *Id.*

8        Before Petitioner-Plaintiff was transferred to ICE custody and while he was in state

9  custody, ICE issued him a Final Administrative Removal Order, finding that he was deportable

10  due to his conviction. *Id.* In January 2023, an asylum officer found that Petitioner-Plaintiff had a

11  reasonable fear of persecution in Mexico and referred his case to Immigration Court for

12  withholding-only proceedings. *Id.* In April 2023, an immigration judge released Petitioner-

13  Plaintiff from custody, finding that he was neither a flight risk nor a danger to the community. *Id.*

14  at 9. Petitioner-Plaintiff was placed on a monitoring program through the Intensive Supervision

15  Appearance Program ("ISAP"). *Id.* Petitioner-Plaintiff must attend in-person check-ins at the

16  ISAP office in San Jose about every six months. *Id.* In August 2024, an immigration judge

17  administratively closed Petitioner-Plaintiff's removal case pending the outcome of his U Visa

18  application. *Id.* at 10.

19        Petitioner-Plaintiff has an in-person check-in at the San Jose ISAP office scheduled for

20  3:00 p.m. today, October 28, 2025. *Id.* at 11. Yesterday morning, Petitioner-Plaintiff's counsel

21  contacted Pamela Johann, Chief of the Civil Division of the U.S. Attorney's Office, to ask if ICE

22  planned to detain Petitioner-Plaintiff at his check-in on October 28, 2025. *Id.* Ms. Johann

23  forwarded the inquiry to ICE and assured Petitioner-Plaintiff's counsel she would keep him

24  apprised of any information she received. *Id.* Ms. Johann then called Petitioner-Plaintiff's

25  counsel to ask if he would wait until close of business on October 27, 2025 to file a habeas

26  petition and motion for a temporary restraining order to see if she could obtain assurance from ICE

27  that Petitioner-Plaintiff would not be detained at his check-in. *Id.* As of the filing of this motion,

28  Petitioner-Plaintiff's counsel had not heard from Ms. Johann. *Id.* Therefore, Petitioner-Plaintiff

fears he will be detained by ICE at his check-in today.

On October 27, 2025, Petitioner-Plaintiff's counsel provided notice of the Petition and a forthcoming motion for a TRO to Respondents' counsel. Decl. of Peter Weiss ¶¶ 4-7, Dkt. No. 3-1. Petitioner-Plaintiff's counsel spoke with Respondents' counsel via telephone, and they briefly discussed the forthcoming motion. *Id.* ¶ 6. Later that day, Petitioner-Plaintiff's counsel filed the Petition. On October 28, 2025, Petitioner-Plaintiff's counsel filed the motion for the TRO and sent a copy to Respondents' counsel. *Id.* ¶ 7. In the motion, Petitioner-Plaintiff contends that his potential arrest at his ISAP check-in and the detention that would follow would violate the Due Process Clause of the Fifth Amendment. In response, the government argues that Petitioner-Plaintiff's motion seeks relief with respect to a purely hypothetical detention. Dkt. No. 7. The government did not, however, indicate that Petitioner-Plaintiff would not be detained. *See id.* at 4 (explaining that counsel for Respondents was "unable to provide the requested information, one way or another, about what might happen at this appointment.")

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555

U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

**III. DISCUSSION**

The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of the hardships tips sharply" in his favor. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody. *See Ortiz Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561-JST, at *2 (N.D. Cal. Mar. 1, 2021); *Diaz v. Kaiser*, No. 25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

In accordance with the reasoning of these cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—(1)"the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards,"

4

and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id*. at 335—support requiring a pre-detention hearing for Petitioner-Plaintiff. Petitioner-Plaintiff has a substantial private interest in remaining out of custody on bond, which "enables him to do a wide range of things open to persons" who are free from custody, such as working, living at home, volunteering, engaging in political activism, and "be[ing] with family and friends ... to form the enduring attachments of normal life." *See* Dkt. No. 3 at 16–17; *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Court finds that there is a risk of erroneous deprivation that the additional safeguard of a pre-detention hearing would help protect against, given that an immigration judge found over two years ago in a still-operative order that Petitioner-Plaintiff was appropriately released on bond. And like other courts in this district, the Court finds that the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," especially given that Petitioner-Plaintiff has complied with his reporting requirements for over two years. *See Jorge M.F.*, 2021 WL 783561 at *3, *Ortega* 415 F. Supp. 3d at 970, *Diaz*, 2025 WL 1676854 at *3.

Petitioner-Plaintiff is likely to suffer immediate and irreparable harm in the absence of preliminary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). Petitioner-Plaintiff' has therefore raised, at the very least, "serious questions" going to the merits of whether his detention without a hearing is "likely unconstitutional." *Weber*, 767 F.3d at 942. Additionally, Petitioner-Plaintiff alleges that he suffers from PTSD, anxiety and depression due to sexual assault that he suffered in a detention setting. The Court therefore also finds that Petitioner-Plaintiff's re-detention in a similar setting would likely subject him to the risk of immediate and irreparable psychological harm.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting Petitioner-Plaintiff temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*,

1  2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner-Plaintiff may be abruptly taken into ICE custody without a hearing, subjecting him and his mother to significant hardship. *See* Dkt. No. 3 at 24. Yet the comparative harm potentially imposed on Respondents-Defendants—a short delay in detaining Petitioner-Plaintiff, should the government ultimately be able to show that detention is warranted notwithstanding the immigration judge's operative release order—is minimal. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

Respondents assert that Petitioner-Plaintiff seeks relief from hypothetical and not actual detention, but its response declines to state unequivocally that Petitioner-Plaintiff will not be detained today. And while Respondents argue that Petitioner-Plaintiff should be required to wait until he is actually arrested, and challenge his detention then, the Court finds that the balance of hardships still tips sharply in Petitioner-Plaintiff's favor even in the current posture. As another judge in this district recently observed, while the government has previously represented that it adhered to a practice of revoking bond only upon a showing of changed circumstances, it is far from clear whether that practice remains in place. *See Diaz v. Kaiser*, Dkt. No. 35, No. 25-cv-05071-TLT (N.D. Cal. Sep. 16, 2025). Moreover, if Petitioner-Plaintiff is detained, it is unclear what right he would retain to challenge the effective rescission of his bond, and it is also unclear what position the government would take with respect to the available remedies, based on its recently-announced policies. *See id.* at 18 (explaining the risk that the petitioner-plaintiff there would not be able to seek review of the revocation of his bond "in the first instance," such that a post-deprivation hearing was "no substitute for what Petitioner-Plaintiff seeks."). Under these circumstances, Respondent's assertions about the adequacy of post-detention review do not undermine Petitioner-Plaintiff's successful showing under *Winter*.

1  Accordingly, the Court GRANTS Petitioner-Plaintiff's Motion for a Temporary Restraining Order.  Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting Barahona–Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)).  In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

## IV. ORDER

IT IS HEREBY ORDERED that Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.  Respondents-Defendants are ENJOINED AND RESTRAINED from re-detaining Petitioner-Plaintiff without notice and a hearing.  This Order shall remain in effect until November 14, 2025 at 5:00 p.m.  The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents-Defendants such that they receive actual notice by no later than October 29, 2025 at 2:00 p.m.

Respondents-Defendants are ORDERED TO SHOW CAUSE in-person at a hearing on November 13, 2025, at 1:00 p.m. why a preliminary injunction should not issue.  The hearing will take place before Judge Gilliam in Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA.  Because Respondents-Defendants only had less than two hours to respond to the motion for TRO, the Court will grant them until November 5, 2025 at 5:00 p.m. to file a fuller response if they wish.  Petitioner-Plaintiff may then file a reply by 5:00 p.m. on November 7.

**IT IS SO ORDERED.**

Dated:   10/28/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

7