UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELADIO CORTEZ MORALES,<br><br>  Plaintiff,<br><br>  v.<br><br>SERGIO ALBARRAN, et al.,<br><br>  Defendants. | Case No. 25-cv-09241-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 3 |

Pending before the Court is Petitioner Eladio Cortez Morales' ("Petitioner") motion for a preliminary injunction. Dkt. No. 3. The Court held a hearing on January 8, 2026. Dkt. No. 22. Petitioner has filed a petition for writ of habeas corpus, alleging that his detention without a hearing before a neutral decisionmaker would violate his constitutional right to due process. Dkt. No. 1. Petitioner asks the Court to preliminarily enjoin Respondents from re-detaining him before providing such a hearing. The Court **GRANTS** Petitioner's motion for a preliminary injunction.

**I.   BACKGROUND**

Petitioner was born in Mexico and asserts through counsel that he was brought to the United States as an infant in about 1989. Dkt. No. 1-1, Declaration of Peter Weiss ("Weiss Decl.") ¶ 6. In 2007, Petitioner was convicted of assault with a deadly weapon for a gang-related shooting, an aggravated felony for which he was sentenced to 22 years in prison. *Id.* ¶ 7. While incarcerated, Petitioner was the victim of sexual violence and was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression as a result, and he has a pending U Visa application based on these events.[1] *Id.* ¶ 8. Petitioner disassociated from the gang while serving

---

[1] In August 2024, an immigration judge administratively closed Petitioner's removal case pending the outcome of his U Visa application. *Id.* at 10.

his sentence, earned his GED, completed courses in anger management and self-improvement, participated in support groups, and served as a mentor in the Youth Offender Program. *Id.* ¶ 9. While Petitioner was in prison, ICE issued a Final Administrative Removal Order under 8 U.S.C. § 1231(a)(6), finding him deportable due to his aggravated felony conviction. *Id.* ¶ 12.[2]

Immediately after his release from prison in October 2022, Petitioner was detained by ICE. *Id.* ¶ 10. In January 2023, an asylum officer found that Petitioner had a reasonable fear of persecution in Mexico and referred his case to Immigration Court for withholding-only proceedings.[3] *Id.* ¶ 13. In April 2023, an immigration judge held a custody redetermination hearing and released Petitioner on bond after finding that he was neither a flight risk nor a danger to the community. *Id.* ¶¶ 14–15. Petitioner was released under an order of supervision, and he was placed on a monitoring program through the Intensive Supervision Appearance Program ("ISAP"). *Id.* ¶ 16. Petitioner must attend in-person check-ins at the ISAP office in San Jose approximately every two months, as well as weekly virtual check-ins. Dkt. No. 21-2, Declaration of Eladio Cortez Morales ("Cortez Morales Decl.") ¶¶ 3–4. For over two and a half years, Petitioner has complied with the order of supervision and ISAP requirements. Weiss Decl. ¶ 18. Initially, he was required to wear an ankle monitor, but ISAP deescalated his case and removed it after a year in recognition of his compliance. *Id.* ¶ 17.

Petitioner has become an active member of his community since his bond release. He attended classes at a local community college and, after receiving a work permit from USCIS, secured full-time work helping unhoused residents access social services. *Id.* ¶¶ 21, 23–25. He is also a recognized leader in the immigrants' rights movement and volunteers with several

---

[2] Petitioner's conviction was vacated for legal invalidity on September 25, 2025. Weiss Decl. ¶ 11. The state court found that Petitioner's guilty plea had not been entered knowingly, voluntarily, and intelligently, in violation of the Fifth and Fourteenth Amendments. *Id.* Petitioner was re-charged in juvenile court on the grounds that he was under 18 when the offense occurred. *Id.* He admitted the charges and his sentence was deemed served. *Id.* Petitioner has no other convictions. *Id.*

[3] Thus, although Petitioner is subject to a final removal order, that order is not executable during the pendency of the withholding-only proceedings. *See Ortiz–Alfaro*, 694 F.3d at 957; 8 U.S.C. § 1231(b)(3).

1  community justice and youth mentoring organizations in the Bay Area. *Id.* ¶¶ 25–27. He provides
2  support to his mother and grandmother, who he accompanies to medical appointments, and assists
3  his disabled uncle with manual labor. Dkt. No. 3 at 11.
4       Petitioner had an in-person check-in at the San Jose ISAP office scheduled for October 28,
5  2025. *Id.* at 11. In advance of the check-in, Petitioner's counsel contacted the government to ask
6  if ICE planned to detain Petitioner. *Id.* After receiving no assurance that he would not be
7  detained, Petitioner filed a petition for a writ of habeas corpus, and he also moved for a temporary
8  restraining order ("TRO"). Dkt. Nos. 1, 3. The Court ordered the government to respond to the
9  motion for a TRO, and the government could not confirm that Petitioner would not be detained
10 during the October 28 check-in. The Court granted the TRO, finding that Petitioner raised serious
11 questions going to the merits, he would face irreparable injury if detained, and the balance of
12 hardships tipped strongly in his favor. *See* Dkt. No. 9 at 4. Petitioner has recurring bi-monthly in-
13 person appointments, and his next check-in with ISAP is in February. *See* Dkt. No. 21 at 13. He
14 therefore seeks a preliminary injunction enjoining the government from re-detaining him without
15 first providing a hearing before a neutral decisionmaker regarding whether there has been a change
16 in circumstances to merit his detention. *See generally id.*

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quotation omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

### III. DISCUSSION

#### A. Petitioner Raises Serious Questions Going to the Merits

"Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For this reason, the Due Process Clause typically requires a "hearing *before* the State deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Some courts have expressed concern about the constitutionality of a system "in which government agents may unilaterally detain someone without a hearing beforehand or immediately afterwards in front of a neutral decisionmaker, when a judge has previously ordered that person released." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1026 (N.D. Cal. 2025). But that is precisely what the government's position here would allow: seemingly unreviewable authority by ICE to detain Petitioner notwithstanding the immigration judge's prior release order.

Very little has changed since Petitioner filed his motion for a TRO, and accordingly, the Court incorporates its prior analysis finding that the *Mathews v. Eldridge* factors support requiring a hearing before Petitioner is detained. *See* Dkt. No. 9 at 4–5 (considering (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. 319, 335 (1976)). It is well established that individuals who are conditionally released from detention have a protected liberty interest. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]."). And the Court finds that Petitioner's interest in that liberty has only grown in the two and a half years since his release on bond. *See Guillermo M. R.*, 791 F. Supp. 3d at 1030 (recognizing that "with the passage of time, a protectable liberty interest can crystallize even where an individual was released from prison in error, where the individual reasonably thought the release was deliberate and lawful.") (cleaned up).

The Court reiterates its prior finding that there is a substantial risk that Petitioner will be

1  erroneously deprived of his liberty interest without a pre-detention hearing before a neutral arbiter.
2  Petitioner finds himself subject to a statutory scheme under which the government can unilaterally
3  determine that "changed circumstances" exist to justify his re-detention. Petitioner's arrest would
4  automatically revoke his bond, *see* 8 C.F.R. § 236.1(c)(9), and his re-detention would be governed
5  by 8 U.S.C. § 1231(a)(6), under which he would not be eligible for an individualized bond
6  hearing.[4] "Put simply, only additional pre-detention process can protect against an erroneous
7  deprivation of [Petitioner's] liberty interest." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025
8  WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025). At the preliminary injunction hearing, the
9  government would not commit to a timeframe in which Petitioner's detention could be reviewed
10 by a neutral arbiter; rather, it confirmed its view that once Petitioner was re-detained, he would
11 have no statutory or regulatory right to a bond hearing. Counsel for Respondents alluded to
12 regulatory provisions under which Petitioner could ask ICE to reconsider its detention decision,
13 but that does not change the reality that ICE's unilateral, unreviewable decision to detain
14 Petitioner would be at issue in the first place. *See Guillermo M.R.*, 791 F. Supp. 3d at 1034
15 (finding post-detention regulatory process for a petitioner subject to detention under § 1231(a)(6)
16 lacked procedural safeguards and provided no access to a neutral arbiter, creating "heightened risk
17 of deprivation" for the petitioner).
18      Thus, the Court finds that a post-deprivation hearing "where the deprivation itself is
19 unreviewable is no substitute" for the relief Petitioner seeks. *Diaz v. Kaiser*, 2025 WL 3011852,
20 at *11 (N.D. Cal. Sept. 16, 2025); *see also Zadvydas*, 533 U.S. at 692 ("The Constitution may well
21 preclude granting an administrative body the unreviewable authority to make determinations
22 implicating fundamental rights." (quotation omitted)). And although Respondents do not address
23 the final *Mathews* factor, the government's interest, the Court again finds that its interest in re-

---

[4] Petitioner was originally detained under the same statute and granted a bond hearing after six months of detention under a preliminary injunction in another matter, but the Supreme Court reversed and remanded. *See Aleman Gonzalez v. Sessions*, 325 F.R.D. 616 (N.D. Cal. 2018), *aff'd*, 955 F.3d 762 (9th Cir. 2020), *rev'd*, 596 U.S. 543 (2022). Although the preliminary injunction is currently in place, there is no guarantee that it would be in place at the time of any re-detention.

5

detaining Petitioner without a pre-deprivation hearing is low, especially given his compliance with his bond release conditions over the last two and a half years. *See* Dkt. No. 9 at 5. Any fiscal or administrative burden of providing a pre-deprivation hearing before a neutral adjudicator is minimal at most, particularly in immigration court, where custody hearings are routine. *See Doe v. Becerra*, 787 F.Supp.3d 1083, 1095 (E.D. Cal. 2025). The Court therefore finds that there are serious questions as to whether ICE may unilaterally deprive Petitioner of his liberty without prior review from a neutral decisionmaker.

### B. Petitioner Faces Irreparable Injury Without Injunctive Relief

The Court also finds that absent injunctive relief, Petitioner will suffer irreparable injury. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Petitioner argues that, like other non-citizens in this district, absent a preliminary injunction, he may be arrested for technical violations of his supervised release that have no bearing on whether he poses a flight risk or a danger to the community. Petitioner cites cases in which ICE re-detained noncitizens for technical, "de minimis" violations of their supervised release conditions, and he presents evidence that ICE continues to make such arrests of noncitizens at their regular check-in appointments. *See* Dkt. Nos. 1-9, 1-10 and 21-4 (local news articles as recent as December 23, 2025 detailing arrests of non-citizens at regular in-person appointments); *see also J.A.E.M. v. Wofford*, No. 1:25-CV-01380-KES-HBK (HC), 2025 WL 3013377, at *5 (E.D. Cal. Oct. 27, 2025) ("Respondents do not argue that petitioner's two late check-ins mean that he is a flight risk or danger to the community."); *Vilela v. Robbins*, No. 1:25-cv-01393-KES-HBK (HC), 2025 WL 3101334, at *4 (E.D. Cal. Nov. 6, 2025) (petitioner arrested because she missed a check-in and failed to seek approval before moving to a new address).

In its opposition, the government contends that there is no imminent threat of injury because the date of Petitioner's October check-in has passed, he was not detained at that appointment, and he does not have any in-person appointments scheduled at this time. *See* Dkt. No. 16 at 9–10. But as Petitioner explains on reply, he has bi-monthly, in-person appointments at the San Jose ISAP office, and his next appointment is just one month from now. *See* Dkt. No. 21

6

at 13.  And at the hearing, the government conceded that these representations were accurate.  The Court therefore joins other courts in this circuit in finding that that Petitioner's regular, recurring check-ins place him at risk of imminent injury.  *See Garro Pinchi v. Noem*, -- F. Supp. 3d --, 2025 WL 3691938, at *7–*8 (N.D. Cal. Dec. 19, 2025) (finding class of noncitizens had standing to challenge potential future arrests where named plaintiffs had check-ins and hearings set for one and three months out); *see also Sun*, 2025 WL 2730235, at *7 ("Sun's imminent check-in appointment, and ICE's failure to provide any assurance that it will not re-detain her at that appointment, clearly establish a risk of irreparable harm entitling Sun to injunctive relief.")

The government argues that Petitioner has not shown he is likely to suffer irreparable harm, because he does not know if and when his arrest will occur.  Dkt. No. 16 at 14.  The government cites the declaration of Deportation Officer Jesse Cruz for the propositions that ICE does not intend to re-detain Petitioner absent changed circumstances, and that ICE is not aware of any changed circumstances at this time.[5]  *See id.* at 8.  But the government fails to provide any detail about what could constitute a change in circumstances that would justify re-detaining Petitioner.  *See generally id.*  And the government indicates that "there may be safety, security, and operational considerations that may counsel against" providing notice that ICE has found a change in circumstances and intends to re-detain Petitioner as a result.  *Id.*  In other words, even if it determined that there were changed circumstances, ICE might decide not to inform Petitioner of those changes based on purported "operational" considerations.  But as set out above, if this happened, Petitioner would have no right, in the government's eyes, to ever have a neutral adjudicator assess the basis for ICE's claim.  Under these circumstances, the Court therefore finds that the government's current assurances that Petitioner would not be detained absent changed circumstances are not determinative.  *See Guillermo M.R.*, 791 F. Supp. 3d at 1026 ("It is difficult

---

[5] Petitioner argues that Mr. Cruz "is a non-supervisory line officer, and the declaration 'does not demonstrate that he has the authority to speak for any of the Respondents or even the ERO.' " Dkt. No. 21 (citing *Hogarth v. Santacruz*, No. 5-25-cv-09472-SPG-MAR, 2025 WL 3211461, at *11 (C.D. Cal. Oct. 23, 2025).  Even assuming *arguendo* that Mr. Cruz's statements are a good faith representation of the government's current stance, it appears undisputed that the government's position could change at any time without explanation or review by a neutral adjudicator.

7

to imagine any court blessing the constitutionality of a system in which parolees [] would not receive any hearing before a judge for more than *six months* after being re-detained following their release, and were limited to asking law enforcement supervisors to reconsider the detention. Yet, that is essentially what Respondents propose here . . . ").

### C. Balance of the Equities and Public Interest

The remaining two *Winter* factors, the balance of the equities and the public interest, also weigh heavily in favor of granting Petitioner injunctive relief. Petitioner argues that he faces the potential violation of his constitutional right to procedural due process and the significant hardship of being detained and separated from his family and his community. *See* Dkt. No. 21 at 20. The government asserts that it will suffer if enjoined from "effectuat[ing] statutes enacted by representatives of its people," and that it has an interest in "preserving its ability to respond to changed circumstances as they arise, and undertaking actions as necessary to enforce the law." Dkt. No. 16 at 16.

While the public has an interest in the efficient administration of this country's immigration laws, it also has a "a strong interest in upholding procedural protections against unlawful detention." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561-JST, at *3 (N.D. Cal. Mar. 1, 2021) (quotations omitted). As this Court has already found, Respondents "cannot reasonably assert that [they] [are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The only real harm potentially imposed on Respondents by a preliminary injunction, therefore, is a short delay in detaining Petitioner, if a neutral adjudicator agrees that there are changed circumstances justifying his re-detention. By contrast, Petitioner has demonstrated the substantial harm he will face if detained without due process, and "all citizens have a stake in upholding the constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Accordingly, the Court **GRANTS** Petitioner's motion for a preliminary injunction.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion for a preliminary injunction is **GRANTED**. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice

and a pre-deprivation hearing before an Immigration Judge to evaluate whether Petitioner's re-detention is warranted based on flight risk or a danger to the community.  This Order shall remain in effect until further order of the Court.  No security bond is required, as the government provides no evidence of costs it will incur due to Petitioner's release.

The parties are directed to meet and confer and file by February 24, 2026 a joint proposed briefing schedule for resolution of the habeas petition.

**IT IS SO ORDERED.**

Dated:   1/13/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

9